IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR ENERGY COMPANY LLC,<br>1615 Poydras Street, 5th Floor<br>New Orleans, LA 70112<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR,<br>1849 C Street, NW<br>Washington, DC 20240<br><br>MINERALS MANAGEMENT SERVICE,<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>LARS HERBST, in his official capacity as<br>Regional Director, Minerals Management Service<br>Gulf of Mexico OCS Region<br>1201 Elmwood Park Boulevard<br>New Orleans, LA, 70123-2394,<br><br>   Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Taylor Energy Company LLC ("Taylor") hereby alleges as follows:

### NATURE OF THE ACTION

1. This case concerns whether the Minerals Management Service ("MMS") may disclose Taylor's confidential and proprietary financial and commercial information to a third party over Taylor's objection. On May 18, 2009, MMS issued a final decision ("MMS Decision") to disclose four cover letters requesting disbursements from a Trust Fund established to fund Taylor's ongoing decommissioning of oil and gas wells and related activities located on the Outer Continental Shelf ("OCS") in the Gulf of Mexico (former Lease OCS-G 04935

- 2 -

(Mississippi Canyon ("MC") Block 20)). Taylor had agreed to the disclosure of three of these letters (the earliest dated letters) with redactions of only "1) the name of the financial institution acting as trustee; and 2) dollar amounts for certain disbursements." MMS rejected these limited redactions, indicating its intent to release Taylor's cover letters in their entirety.

2. In accordance with Taylor's ongoing practice to assert and maintain confidentiality judiciously and only for its most sensitive information, and in order to conserve the Court's resources, Taylor maintains its present objection before this Court only as to the portion of the MMS Decision pertaining to MMS' release of the second category above ("dollar amounts for certain disbursements").

3. MMS also announced its decision to disclose the fourth letter dated April 6, 2009, although MMS has afforded Taylor no opportunity to assert confidentiality as required by law. On information and belief, Taylor also is concerned that MMS will similarly seek to extend its disclosure decision to apply to subsequent disbursement request cover letters, including the most recently submitted such cover letter on May 4, 2009, without further consulting Taylor.

4. The MMS Decision to release Taylor's confidential information violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). The MMS Decision is arbitrary and capricious because the information to be released falls within Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(4), and thus, under the well-established law in this Circuit, must be withheld. The relevant information also is covered by the Trade Secrets Act ("TSA"), and thus the MMS Decision is "not in accordance with law" and in excess of MMS' statutory authority. This information goes to the heart of Taylor's business model and purpose and embodies the details of Taylor's business costs to carry out ongoing decommissioning

activities unrivaled in their technical complexity. Disclosure of this information would substantially disrupt Taylor's ability to conduct its business.

5.  Taylor respectfully requests that the Court declare the MMS Decision unlawful; declare the MMS Decision limited to the four cover letters presently before the Court; and permanently enjoin the release of the protected information.

## CONFIDENTIALITY OF FILINGS

6.  Taylor will file a Motion to Seal, pursuant to LCvR 5.1(j) and LCvR 5.4(e)(2), and the following attachments thereto: i) a copy of the MMS Decision; ii) copies of the four unredacted Taylor disbursement request cover letters appended to the MMS Decision, that are the subject of this action; and iii) a second set of copies of these same cover letters, highlighted to reflect the redactions as submitted by Taylor to MMS for which Taylor continues to maintain its claims of confidentiality. The Motion to Seal will respectfully request that this Court order the attachments thereto to be maintained as confidential (apart from the Complaint and the Motion to Seal itself which may be publicly disclosed).

7.  The attachments to the Motion to Seal will be provided under seal to the Court in order to afford the Court an opportunity to fully review the confidential information and Taylor's specific proposed redactions. The filing of the Complaint or the Motion to Seal in no way constitutes an authorization by Taylor for the public disclosure of those attachments.

## JURISDICTION AND VENUE

8.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the APA and also involves the application of the APA and the TSA.

9.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(e) because the Defendant agencies are located in the District of Columbia.

10.    No administrative appeal is available from the MMS Decision. The MMS Decision provides: "Should you wish to appeal this decision, you may do so following the requirements set forth in 43 CFR 2 Subpart D." Yet these cited regulations govern only appeals by FOIA requesters to compel disclosure of withheld information; they provide no means by which a submitter may enjoin an agency's disclosure.

## PARTIES

11.    Plaintiff Taylor Energy Company LLC is a United States corporation, with its principal office and place of business at 1615 Poydras Street, Suite 500, New Orleans, LA 70112. It is engaged in, among other things, the business of marketing and providing decommissioning services on the OCS.

12.    Defendant Department of the Interior is a federal agency of the United States within the scope 5 U.S.C. § 701(b)(1) (APA) and 28 U.S.C § 1391 (venue). The Minerals Management Service ("MMS") is a sub-agency of the Department of the Interior, and is also within the scope of 5 U.S.C. § 701(b)(1) and 28 U.S.C § 1391. Defendant Lars Herbst is the Regional Director of the MMS Gulf of Mexico OCS Region and is a Defendant in his official capacity, in which capacity he signed and issued the MMS Decision at issue in this action.

13.    For ease of reference, Defendants are collectively referred to herein as "MMS." Moreover, Taylor and MMS may be collectively referred to herein as the "Parties."

## LEGAL FRAMEWORK

14.    The FOIA authorizes agencies to disclose certain information upon a request for records. However, Exemption 4 of FOIA protects "trade secrets and commercial or financial

information obtained from a person and privileged or confidential" that might otherwise be subject to disclosure under FOIA. 5 U.S.C. § 552(b)(4).

15. The TSA, provides, among other things, that any federal government officer or employee who "publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; . . . shall be fined under this title, or imprisoned not more than one year, or both; and shall be removed from office or employment." 18 U.S.C. § 1905 (titled "Disclosure of Confidential Information").

16. Because the TSA is at least coextensive with Exemption 4, information falling under Exemption 4 must be withheld. Therefore, unlike other FOIA Exemptions, Exemption 4 constitutes a mandatory bar to disclosure of information within its coverage and affords agencies no discretion to determine otherwise.

17. FOIA contains no provision whereby a third party may claim special or exclusive status to obtain information. Therefore, disclosure to any third party may result in broader disclosure pursuant to any subsequent public request.

18. There exists no independent statute or regulation otherwise authorizing the disclosure of the type of information at issue to any third party.

## FACTUAL BACKGROUND

19.     On September 16, 2004, Hurricane Ivan triggered a massive mudslide which toppled an oil and gas production platform at MC Block 20, located in approximately 440 feet of water. The event deposited in excess of 100 feet of mud and sediment over 28 adjoining oil and gas wells. Taylor was the lessee and operator of MC Block 20 at the time. As lessee, Taylor is required to perform decommissioning activities now that production operations have ceased. 30 C.F.R. 250.1700 *et seq*. Subsequently, in conjunction with MMS, Taylor has undertaken substantial efforts, unprecedented in their technical complexity, to study the extent of damage onsite, monitor for pollution and any environmental risks, and devise a permanent solution at the site.

20.     On March 19, 2008, Taylor and MMS entered into a Trust Agreement to establish a secure funding mechanism for Taylor to "fulfill certain obligations to plug and abandon wells, remove a portion of the platform and facilities, clear the seafloor of obstructions, and take corrective action associated with wells and facilities" on the relevant OCS leases. Taylor funded the Trust Fund, to date, entirely with its own money. Pursuant to the terms of the Trust Agreement, funds from the Trust Fund only may be disbursed to Taylor for its decommissioning work performed at MC Block 20. Any such disbursement requires MMS' advance approval. Taylor is presently proceeding with onsite decommissioning activities pursuant to a Draft Work Plan, as called for by the Trust Agreement, submitted to MMS on May 19, 2008. Based on Taylor's gaining valuable technical experience in decommissioning the first few wells over the next several months, Taylor will prepare and submit, and the Parties will negotiate, more detailed future iterations of the Draft Work Plan to determine a reasonable and fair course of action for the remaining wells.

21.     On November 20, 2008, the Parties executed a Disbursement Agreement to set forth detailed procedures whereby Taylor may request and collect timely disbursements from the Trust Fund essential to Taylor (and its contractors') ability to proceed with its obligations under the Trust Agreement and Draft Work Plan. Each Taylor disbursement request typically must include supporting documentation substantiating the need for disbursements from the Trust Fund and the specific activities to be funded.

22.     As of the date of filing of this Complaint, Taylor has submitted five disbursement requests for various work (November 24 and December 1, 2008, January 20, April 6, and May 4, 2009). To facilitate MMS' review and permit the prompt authorization of needed disbursements from the Trust Fund, Taylor prepared and attached a cover letter to each disbursement request. In addition to the specific work to be performed and the other pertinent information such as details regarding Taylor's contracted drilling rig, the cover letters also include the associated cost of the work performed and the identity of the trustee. Taylor also submitted detailed payment information and documentation as attachments to the various cover letters. Only the four cover letters addressed in and appended to MMS' Decision are the subject of this action.

23.     On June 20, 2008 (after the execution of the Trust Agreement and prior to execution of the Disbursement Agreement), MMS executed a unique and unprecedented agreement with BP Exploration and Production, Inc. ("BP"), the former lessee at MC Block 20, pertaining to Taylor's submissions to MMS in conjunction with its MC Block 20 decommissioning activities. Pursuant to this BP Agreement, MMS covenanted to, in relevant part, "provide BP with . . . any Trust Fund Release Requests . . . except to the extent these documents are exempt from disclosure under the Freedom of Information Act, within five (5) days of receipt by the MMS." MMS entered into the BP Agreement without Taylor's knowledge

- 8 -

or participation. Moreover, as verified in MMS' responses to FOIA requests submitted to Taylor, in no other instance has MMS entered into an agreement purporting to require MMS' mandatory disclosure to the other agreeing party of a third party's submissions.

24. The BP Agreement by its terms bars MMS from sharing Taylor's documents with BP where they are exempt from disclosure under FOIA.

25. Taylor has advised MMS on multiple occasions, and MMS has never contended otherwise, that disclosure of Taylor's confidential business information to BP will render such information releasable to any member of the public, including Taylor's competitors.

26. At all relevant times, Taylor has considered its redacted information in the disbursement request cover letters to be confidential and proprietary commercial and financial information within the meaning of the FOIA or trade secrets within the meaning of the TSA, and has protected it as such.

27. Between July 2008 and September 2008, the parties exchanged several oral and written communications regarding the disclosure of only the Draft Work Plan to BP.

28. On December 19, 2008, Taylor sent an email to MMS identifying other confidential Taylor documents in MMS' possession.

29. On February 2, 2009, MMS sent a letter to Taylor's counsel addressing for the first time the confidentiality of documents other than the Work Plan. Regarding the disbursement request cover letters, MMS instructed Taylor to identify the "specific passages you believe exempt and the FOIA rationale for withholding that information."

30. On March 11, 2009, Taylor responded to the February 2, 2009 letter. In relevant part, Taylor agreed to the disclosure of the disbursement request cover letters with limited redactions encompassing the identity of the trustee financial institution and the specific

- 9 -

disbursement dollar amounts. Taylor expressed several general objections applicable to all Taylor documents denoted in MMS' February 2, 2009 letter. Moreover, consistent with its assertions of confidentiality for other items treated in the letter, Taylor explained that the cover letters' redactions contained sensitive financial and commercial information subject to Exemption 4 of FOIA, and therefore MMS could not share it with BP or other third parties. This proprietary information bears on Taylor's costs and expenses to conduct its business of sophisticated decommissioning services. Taylor also "reserve[d] its right to seek to protect from disclosure future disbursement request cover letters to the extent that those letters may contain financial or otherwise protected confidential business information."

31. On May 19, 2009, Taylor received via express mail the MMS Decision that is the subject of this action. In relevant part, MMS stated its position that "[t]he agreement that MMS has with BP requires it to provide BP with the cover letters of the disbursement request." MMS then summarily determined that Taylor's specific redactions and explanation in its March 11, 2009 letter did not merit nondisclosure. The MMS Decision would also release the April 6, 2009 disbursement letter even though Taylor has never had an opportunity to exercise its reserved right to object to its disclosure. MMS concluded that "[c]onsequently, we may not withhold such information under Exemption 4 of FOIA and will release the cover letters to BP 10 business days after receipt of this notice."

32. Based on Taylor's information and belief, MMS may reach a similar determination with respect to the most recent cover letter dated May 4, 2009.

33. While bank information clearly is of a kind that is not customarily shared in any commercial setting, and despite MMS' failure to insist upon the disclosure of the same information in the Trust Agreement, Taylor no longer objects to disclosure of the identity of its

trustee for purposes of this action. Taylor's trustee is a major financial institution whose identity alone reveals nothing unique or significant regarding the Trust Fund. Moreover, Taylor understands that MMS does not plan to disclose any other details regarding Taylor's Trust Fund account.

34. The MMS Decision elects to disclose only the cover letters while reaching different dispositions for similar information redacted in other Taylor documents. Namely, MMS allows Taylor the opportunity, until June 2, 2009, to further substantiate the confidentiality of analogous dollar amounts for various work efforts included in the Trust Agreement and Disbursement Agreement, pursuant to which the disbursement requests are made.

35. MMS' piecemeal disclosure of Taylor's proprietary information through individual disbursement request cover letters nonetheless ultimately achieves the same result as disclosing other Taylor confidential documents not covered by the MMS Decision. Further, whether in itemized or aggregate form, this information reflects Taylor's fundamental costs of doing business, and its disclosure to competitors and the public would likely cause Taylor substantial competitive harm.

36. The MMS Decision insists that the BP Agreement "obliges MMS to provide BP certain documents" and "MMS intends to fulfill its obligations" thereunder, even though BP does not currently seek any Taylor documents. Taylor's March 11, 2009 letter to MMS explains that "Taylor has worked with BP to provide BP with the information it seeks regarding Taylor's decommissioning efforts on MC Block 20." In Attachment A thereto, BP certifies that "[a]t this time, BP is not seeking to obtain from the MMS a copy of Taylor's . . . receipts and supporting information for the trust fund release requests."

37. The four disbursement request cover letters are the only Taylor documents presently before the Court. Should MMS subsequently elect to disclose unredacted versions of the Trust Agreement or Disbursement Agreement, or any other confidential Taylor document, Taylor may amend this Complaint in accordance with the Court's procedural rules.

38. On May 28, 2009, MMS issued an email to Taylor agreeing that, following Taylor's filing of this Complaint, MMS will "not provide the letters to BP prior to a dispositive ruling from the court."

## COUNT I – ADMINISTRATIVE PROCEDURE ACT
(Release is Arbitrary and Capricious and in Excess of Statutory Authority Under FOIA)

39. Paragraphs 1 through 38 above are incorporated here by reference, as if fully set forth herein.

40. The MMS Decision is a final agency action within the meaning of 5 U.S.C. § 704, and is thus a reviewable action as defined by the APA. Taylor has exhausted all available administrative remedies.

41. The disbursement request cover letters that MMS seeks to disclose to BP contain commercial or financial information--i.e., specific disbursement dollar amounts reflecting Taylor's costs to undertake various specialized decommissioning activities on MC Block 20 -- falling within Exemption 4 of FOIA. Taylor has continuously maintained this information as confidential.

42. Taylor will likely suffer irreparable harm if MMS releases this proprietary and confidential information to BP, thereby making it available to any third party requester, including a commercial competitor.

43. Therefore, unless such information is redacted, MMS is not authorized by FOIA to disclose the cover letters.

44. MMS cites no other statutory or regulatory authority authorizing the disclosure of Taylor's unredacted cover letters. The MMS Decision asserts that MMS' unprecedented contractual arrangement with a third party, BP, provides such independent authority. BP is presently seeking no documents under this BP Agreement. Moreover, the BP Agreement recognizes that documents falling within Exemption 4 are not within its scope.

45. The MMS Decision purports to disclose Taylor's unredacted disbursement request cover letters to BP on or around June 3, 2009.

46. At the same time, MMS' Decision did not presently require disclosure of similar commercial and financial information contained in other Taylor documents that are currently subject to ongoing confidentiality discussions between Taylor and MMS.

47. The MMS Decision is therefore unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A). It is also unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C). Accordingly, Taylor is entitled to and seeks a declaration that the MMS Decision is unlawful and a permanent injunction barring MMS' release of Taylor's unredacted cover letters to BP or other third parties.

## COUNT II –ADMINISTRATIVE PROCEDURE ACT
### (Release Violates the Trade Secrets Act)

48. Paragraphs 1 to 47 above are incorporated here by reference, as if fully set forth herein.

49. The MMS Decision is a final agency action within the meaning of 5 U.S.C. § 704, and thus is a reviewable action as defined by the APA. Taylor has exhausted all available administrative remedies.

50. As a matter of law, MMS may not disclose to any third party any information falling within the coextensive scope of the TSA and FOIA Exemption 4.

51. The redacted financial information in the disbursement agreement cover letters contains Taylor's trade secrets or protected information within the meaning of the TSA, 18 U.S.C. § 1905.

52. Taylor will likely suffer irreparable harm if MMS releases Taylor's trade secrets or protected information to BP. Moreover, Taylor's injury is likely multiplied since disclosure to BP legally requires MMS to make the same information available to any third party requester, including a commercial competitor.

53. The MMS Decision purports to disclose Taylor's unredacted disbursement request cover letters to BP on or around June 3, 2009. This release of trade secrets or protected information will violate the TSA.

54. The MMS Decision is therefore unlawful pursuant to 5 U.S.C. § 706(2)(A) because it is "not in accordance with law," including the TSA, and is otherwise arbitrary, capricious, and an abuse of discretion. It is also unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C). Accordingly, Taylor is entitled to and seeks a declaration that the MMS Decision is unlawful and a permanent injunction barring MMS' release of Taylor's unredacted cover letters to BP or other third parties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Taylor respectfully requests that this Court:

1. Declare and enter a judgment holding unlawful and setting aside the MMS Decision to release Taylor's four disbursement request cover letters in unredacted

form as being arbitrary, capricious, and an abuse of discretion; otherwise contrary to law; and in excess of MMS' statutory authority;

2. Declare the MMS Decision is limited to the four disbursement request cover letters presently before the Court and has no applicability to subsequent disbursement cover letters that have been or may be submitted by Taylor to MMS;

3. Permanently enjoin MMS from releasing or disclosing to BP or any third party the redacted information in Taylor's disbursement request cover letters;

4. Award Taylor its costs and reasonable attorney's fees;

5. Grant such other and further legal or equitable relief as the Court may deem just and proper.

Dated: June 2, 2009

Respectfully submitted,

BEVERIDGE & DIAMOND, P.C.

By: _____
Fred R. Wagner [DC Bar No. 416009]
Peter J. Schaumberg [DC Bar No. 913202]
James M. Auslander [DC Bar No. 974898]
1350 I Street, NW, Suite 700
Washington, D.C. 20005-3311
Phone: (202) 789-6041
Fax: (202) 789-6190
fwagner@bdlaw.com
pschaumberg@bdlaw.com
jauslander@bdlaw.com
*Attorneys for Plaintiff Taylor Energy Company LLC*